Carson v. Williams 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-90-219-CV





JACK CARSON AND CACTUS CANYON QUARRIES OF TEXAS, INC.,



 APPELLANTS


vs.





JOE R. WILLIAMS, BILLIE LOUISE WILLIAMS,


TEXAS ARCHITECTURAL AGGREGATES, INC., BILBROUGH MARBLE


COMPANY, FLYING W. ENTERPRISES, AND DAVID WILLIAMS,



 APPELLEES



 




FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT



NO. 9752A, HONORABLE THOMAS C. FERGUSON, JUDGE PRESIDING



 





 This is an appeal from a take-nothing judgment in a trespass-to-try-title case. We
will reverse the judgment of the trial court.

THE CONTROVERSY


 Appellant Jack Carson is general partner of Fairland Investment Company (FIC)
and president of appellant Cactus Canyon Quarries of Texas, Inc. He owns and operates a granite
quarry in Burnet County commonly known as the "Snead Quarry." Appellee Joe R. Williams
owns or controls Zeus Corporation and appellees Texas Architectural Aggregates, Inc., Bilbrough Marble Company and Flying W Enterprises. He operates a Burnet County granite
quarry in competition with Carson. (1)

 This dispute involves part of a 66.93 acre tract of land located in Burnet County,
Texas. See diagram below. The tract was created in a 1943 deed by combining a 17.56 acre tract
and a portion of an adjoining 117 acre tract. The parties do not dispute on appeal Carson's
superior right to granite in the northern portion, containing 17.56 acres. The southern portion,
below a line designated the "TGC Granite Line," was not at issue in the trial court below. At
issue here is the right to the granite in the remaining land lying between the undisputed portions
of the tract, designated the "GAP." 














 The actual location of the 17.56 acre tract was disputed at trial. Williams claimed
that tract was in a more northerly location separated from the 117 acre tract, thus creating a gap
in which he claimed the right to the granite. Carson contended the 17.56 acre tract lay in a more
southerly position, but in any event adjoined the 117 acre tract, causing no gap, and thus entitling
him to the granite. The trial court ruled that the tract lay north but nevertheless adjoined the 117
acres, there being no gap.

 Williams owns the surface of the 66.93 acre tract by virtue of two conveyances to
him in 1984, one from Sally Williams and one from Frank and Mary Louise Reading. Carson
claims the granite rights in the tract by virtue of two 1984 leases, one from Tom O'Donnell to
Carson purportedly covering all the 66.93 acre tract and one from FIC and Carson to Cactus
Canyon Quarries covering the 17.56 acre tract. See chart below.














 The controversy arises out of a reservation of granite rights set forth in a 1943 deed
from O'Donnell to W.T. Parks. In a 1939 deed, W.H. and Annie Koon conveyed to O'Donnell
two tracts of land, the first tract being 117 acres (out of the 178 acre Rawlings tract) and the
second being 17.56 acres. In 1943, O'Donnell conveyed to Parks three tracts of land, the
"Second Tract" containing 66.93 acres comprised of the 17.56 acre tract and a portion of the
adjoining 117 acre tract. In the same 1943 deed, O'Donnell reserved to himself all the granite
rock in that part of the 66.93 acres described in the 1939 deed from Koon to O'Donnell. Williams
eventually acquired Parks's property. 

 Williams contends that O'Donnell's 1943 deed conveyed to Parks an additional
strip of land, the so-called "gap," lying between the 17.56 acre tract and the 117 acre tract. 
According to Williams, because the gap had not been described in Koon's 1939 deed, O'Donnell
did not reserve for himself the granite in the gap. Consequently, Williams contends these granite
rights passed to Parks and eventually to him. Carson contends there was no gap, but in any event
that O'Donnell reserved all the granite rock in the disputed area and conveyed it by lease to him. 
The trial court found that there was no gap; that the 17.56 acre tract and the remainder of the
66.93 acre tract adjoin and abut with no vacancy of any kind between the two; that there was no
vacancy in title to land or rock south of the 17.56 acre tract; and adjudged that the 17.56 acre tract
and the 117 acre "first tract" in the 1939 Koon deed adjoin and abut.

 Carson raises eleven points of error claiming generally that, based upon the
findings, the trial court should have rendered judgment in his favor on theories of common source
and prior possession, and further that the principle of res judicata prevented adjudication of title
already decided in his favor. We sustain Carson's res judicata and common source points. As
a consequence, we need not consider his prior possession points two and ten.



RES JUDICATA


 In his fourth point of error, Carson complains that the trial judge erred in failing
to apply the doctrine of res judicata because a previous cause brought by Williams's predecessor
in title decided title to the granite rights in question. (2) We agree.

 On March 23, 1984, Sally Williams, Frank Reading, and Mary Louis Reading,
appellant Williams's predecessor in title, filed suit in the 33rd Judicial District Court of Burnet
County in cause number 9577 against the unknown heirs, legal representatives, or assigns of
W.D. Engles, Avery Tobey, Benjamin Rawlings, Henry Lewis, James M. Rawlings, John H.
Andrews and W.H. Westfall to quiet title to granite rights in an 80 acre tract of land conveyed
in 1976 by deed from Nelson Lynn to Sally Williams and her husband. Sally Williams
subsequently conveyed the property, describing it as two 40.027 acre tracts represented by
Exhibits "A" and "B" attached to the petition in cause number 9577. It is clear from a comparison
of exhibits "A" and "B" attached to the pleadings in cause number 9577, the survey plat attached
to the 1976 Lynn-to-Williams deed, and exhibit "A" attached to the pleadings in the present
lawsuit, that the disputed gap area at issue here also was in issue in cause number 9577.

 The plaintiffs in cause number 9577 claimed that a search of their chain of title to
the 80 acre tract revealed a deed from Westfall dated July 2, 1895, containing the following
reservation of granite rights:



Out of the above described tract of land there is excepted and not intended to be
included in this conveyance; (1st) two and one half acres out of the North East
corner of said tract. (2nd) All of the granite stone situated on said tract. (3rd) The
right of way of the Austin and North Western R.R. Co. as located running across
said land, all of which having been heretofore conveyed to other parties by Deeds
duly recorded and are not intended to be included in this conveyance.



The plaintiffs in cause number 9577 alleged that no "other conveyance" of the granite rights took
place, except for those to a 17.56 acre tract carved out of the 80 acre tract; that no one had ever
claimed, mined, or in any way denied plaintiffs' granite ownership rights; and that plaintiffs were
therefore entitled to claim ownership of the granite rights. Plaintiffs prayed for fee simple
ownership of all granite lying on the surface of and under the 80 acre tract.

 After citation by publication, FIC answered "not guilty" and in addition asserted
the affirmative defense of adverse possession with respect to the 17.56 acre tract only.

 On October 10, 1984, the trial court dismissed cause number 9577 with prejudice
to the plaintiffs. Such a dismissal "functions as a final determination on the merits." Mossler v.
Shields, 818 S.W.2d 752, 754 (Tex. 1991); see also Zimmerman v. Texaco, 409 S.W.2d 607,
613-14 (Tex. Civ. App. 1966, writ ref'd n.r.e.) (cited with approval in Mossler). On that same
date, appellee Williams acquired his title from Sally Williams.

 In a trespass-to-try-title case, the effect of a dismissal with prejudice is the same
as that of a take-nothing judgment; it is the equivalent of an adjudication that the defendant has
title to the land involved. See Halbert v. Green, 293 S.W.2d 848, 851-52 (Tex. 1956) (involving
mineral interests); Permian Oil Co. v. Smith, 73 S.W.2d 490, 496 (Tex. 1934). This take-nothing
judgment is conclusive against Williams as Sally Williams's successor in title since he acquired
his rights after the inception of the suit. See Tex. Prop. Code Ann. § 22.003 (1984).

 Williams argues that only the 17.56 acre tract was at issue in cause number 9577. 
However, it is established that the defendant's answer of "not guilty" put into issue all of the land
described in the plaintiff's pleadings. Permian Oil Co., 107 S.W.2d at 570; Humphrey v.
Dougherty, 420 S.W.2d 450 (Tex. Civ. App. 1967), rev'd on other grounds, 424 S.W.2d 617
(Tex. 1968); Dunn v. Land, 193 S.W.2d 698, 704 (Tex. Civ. App. 1917, no writ). The fact that
FIC may have asserted an affirmative defense with respect to the 17.56 acre tract only is of no
consequence.

 Williams, as successor in title to Sally Williams, is barred from claiming any
granite rights determined in cause number 9577 and also at issue here. We sustain Carson's
fourth point of error.



DISCLAIMER OF TITLE


 As between Carson and Williams, Carson is entitled to judgment on the basis of
res judicata. However, Carson complains in his third point of error that the trial court erred in
failing to grant Carson judgment against appellees Texas Agricultural Aggregates, Inc., and David
M. Williams, both of whom answered disclaiming any right or title to the land involved in this
case. 

 In a trespass-to-try-title case involving multiple defendants, the fact that a
defendant disclaims does not entitle the plaintiff to judgment against the disclaiming defendant
absent proof of plaintiff's title. Jansen v. Kelley, 206 S.W.2d 856 (Tex. Civ. App. 1947, writ
ref'd n.r.e.); Rio Bravo Oil Co. v. Hunt Petroleum Corp., 439 S.W.2d 853 (Tex. Civ. App.
1969), rev'd on other grounds, 455 S.W.2d 722 (1970). (3)

 We will hold, however, that as between Carson and all the defendants below,
Carson has proven his superior title to the granite rights in question by operation of the doctrine
of common source. We therefore sustain this third point of error.



COMMON SOURCE


 To the extent Carson was required to prove his claim to the granite rock in the land
in question, we hold that he did so. In a trespass-to-try-title action, title may be proven by
establishing superior title out of a common source. Land v. Turner, 377 S.W.2d 181, 183 (Tex.
1964). This "common source" doctrine is codified in Rule 798 of the Texas Rules of Civil
Procedure:



It shall not be necessary for the plaintiff to deraign title beyond a common source. 
Proof of a common source may be made by the plaintiff by certified copies of the
deeds showing a chain of title to the defendant emanating from and under such
common source. Before any such certified copies shall be read in evidence, they
shall be filed with the papers of the suit three days before trial, and the adverse
party served with notice of such filing as in other cases. Such certified copies shall
not be evidence of title in the defendant unless offered in evidence by him. The
plaintiff may make any legal objection to such certified copies, or the originals
thereof, when introduced by the defendant.



Tex. R. Civ. P. Ann. 798 (1967). In his first point of error, Carson complains that the trial court
erred in failing to render judgment for him based upon the doctrine of common source. In related
point of error nine, Carson argues that the trial court erred in making finding of fact number
eight--that Carson had proved no title except to the "17.28" [sic] acre tract--and conclusion of law
number one--that Carson is not entitled to recover any land in controversy other than granite rock
in the 17.56 acre tract. 

 To prove a prima facie case of common source, a plaintiff must connect his title
to the common source by a complete chain of title, connect defendant's title by complete chain
of title to the same source, and show that plaintiff's title is superior to one defendants derived
from the common source. Clarady v. Bonin, 597 S.W.2d 445, 446 (Tex. App. 1980, writ ref'd
n.r.e.) (citing Jones v. Mid-State Homes, Inc., 356 S.W.2d 923, 924 (Tex. 1962)). Once Carson
establishes his title, he is entitled to judgment unless the presumption is refuted.

 The parties agree and the trial court found that Williams and Carson both trace their
titles to O'Donnell as their common source. The trial court further found that with respect to the
17.56 acre tract, Carson has superior title to the granite rock and Williams has superior title to
the fee simple interest, save and except the granite. The record contains evidence that O'Donnell
leased to Carson all of the granite rights in the 66.93 acre tract; Carson introduced a 1984 granite
lease from O'Donnell to Cactus Canyon Quarries.

 Williams argues that this lease does not establish superior title in Carson to all of
the land conveyed in the 1943 deed from O'Donnell to Parks because there is a strip of land
between the 17.56 acres and the remaining portion of the 66.93 acres which is not described in
the 1939 deed and to which O'Donnell did not therefore reserve the granite rights. Williams
claims that granite rights to this strip of land--referred to at trial as "the gap"--passed to Parks
along with the fee title in the 1943 deed, and eventually to Williams through his chain of title.

 As previously discussed, the doctrine of res judicata bars Williams from claiming
granite rights to the tract at issue here. Furthermore, the trial court's judgment and its findings
of fact and conclusions of law do not support Williams's argument. The trial court found that the
17.56 acre tract adjoins and abuts the remaining portion of the 66.93 acre tract and concluded
"[t]hat there is no vacancy in title to land or granite rock just south of the 17.56 acre tract." The
trial court rendered judgment that "the 17.56 acre tract and the tract described as the `First Tract'
in the deed from W.H. Koon and wife, Annie Koon, to Tom O'Donnell dated November 24,
1939, recorded in Volume 89, Page 282 of the Deed Records of Burnet County, Texas adjoin and
abut each other."

 Despite these favorable findings and conclusions, the trial court found that Carson
had not proven his claim to granite in the so-called gap and rendered judgment that Carson take
nothing. We must therefore determine if the trial court's judgment can be sustained on any other
basis.


TITLE IN THIRD PARTY


 Williams's only other basis for refuting Carson's superior title to the granite is his
claim that the title rests in a third-party, Texas Granite Company, a matter not before the trial 
court.

 Plaintiff's burden in a trespass-to-try-title case is not to establish superiority of title
as against the world, but only as against parties bound by the judgment. See Permian Oil Co., 107
S.W.2d at 569. The trial court could not have properly considered whether Texas Granite
Company held superior rights to the granite. See Mapco, Inc. v. Carter, 817 S.W.2d 686 (Tex.
1991). The trial court may decide only the case before it. 

 By points of error five and eleven, Carson argues that the trial court erred in
interpreting a "Stipulation of Interest" entered into between Carson and Texas Granite Company
regarding granite rights involved in this case, and in failing to make requested finding of fact
number fifteen relating to this stipulation. These points are pertinent only to Williams's
alternative argument that Carson has not proved superior title because Texas Granite Company
owns the granite rights in question. For this reason we overrule Carson's points of error five and
eleven.

 We hold that Carson established a prima facie case of superior title back to the
common source. Neither of Williams's arguments against Carson's title is sufficient to rebut this
prima facie case; the "gap" argument is barred by the doctrine of res judicata and is not supported
by the trial court's findings of fact, conclusions of law, or judgment, and the third-party-title
argument may not properly be considered in this case. We therefore sustain Carson's points of
error one and nine.



NON-ANSWERING DEFENDANTS


 Points of error six and seven complain that the trial court erred in failing to render
a default judgment for Carson against defendant Bilbrough Marble Company and in making
finding of fact number nine that Bilbrough was an assumed name of Texas Architectural
Aggregates, Inc. (TAA). Carson served Bilbrough with citation, but Bilbrough failed to answer. 
Carson moved for a default judgment against Bilbrough at the beginning of the trial. At a later
hearing in aid of judgment, Williams presented evidence that Bilbrough is not a separate entity,
but is a division name for a company acquired by TAA. Carson argues that the court erred by
refusing to render a default judgment against Bilbrough and in making a finding of fact based on
proof presented after the close of evidence.

 The trial court did not err in permitting testimony after the close of evidence
regarding the relationship of the non-answering party to another party before the court. The
admission of this evidence acted as a reopening of the case. See Uhlir v. Golden Triangle Dev.
Corp., 763 S.W.2d 512 (Tex. App. 1988, writ denied). The trial judge, particularly in a trial
before the court, is authorized to permit additional evidence to be offered at any time it clearly
appears necessary to the due administration of justice. Tex. R. Civ. P. Ann. 270 (Supp. 1992).

 We overrule Carson's points of error six and seven.



LAND DESCRIPTION


 Carson complains in his eighth point of error that the trial court erred in failing to
attach a description of the 17.56 acre tract to its judgment. In its judgment, the trial court refers
to an attached "exhibit A," but no exhibit is attached to the judgment. Such an exhibit is attached,
however, to the findings of fact and conclusions of law. At oral argument and in his brief
Williams agreed that the trial court clearly intended to attach exhibit "A" to the judgment and that
this was obviously an oversight or clerical error. As there is no disagreement regarding this
point, we sustain Carson's eighth point of error.

 For the reasons set forth above, we reverse the judgment and remand the cause to
the trial court for rendition of judgment for Carson consistent with this opinion.



 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Reversed and Remanded with Instructions

Filed: August 12, 1992

[Do Not Publish] 
1. Throughout this opinion appellants will be referred to collectively as "Carson" and
appellees will be referred to collectively as "Williams" unless the context requires otherwise.
2. "A final judgment that establishes title or right to possession in an action to recover real
property is conclusive against the party from whom the property is recovered and against a
person claiming the property through that party by a title that arises after the action is
initiated." Tex. Prop. Code Ann. § 22.003 (1984).
3. Not all courts of appeals agree; some have held that plaintiffs are entitled to judgment
against disclaiming defendants even absent proof of title. See Clarady v. Bonin, 597 S.W.2d
445 (Tex. Civ. App. - Beaumont 1980, writ ref'd n.r.e.); Leach v. Cassity's Estate, 279
S.W.2d 630 (Tex. Civ. App. - Fort Worth 1955, writ ref'd n.r.e.); Williams v. Humble Oil &
Ref. Co., 139 S.W.2d 346 (Tex. Civ. App. - El Paso 1940, writ dism'd judgm't cor.); Wise v.
Haynes, 103 S.W.2d 477 (Tex. Civ. App. - Texarkana 1937, no writ).